┌─────────────────────────────────────────────┐
**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 9, 2019[*]
Decided May 10, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-1888

| | |
|---|---|
| SUSAN M. TOMAS, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 07 CV 4542 |
| ILLINOIS DEPARTMENT OF | |
| EMPLOYMENT SECURITY, et al., | Sharon Johnson Coleman, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Susan Tomas, who is white and Polish, sued the Illinois Department of Employment Security and its employees under Title VII and the Fourteenth Amendment after she was passed over for a promotion. She also asserted that the defendants retaliated against her for filing a discrimination charge with the Equal Employment Opportunity Commission. Lastly, she brought discrimination and

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

retaliation claims against both her union—the American Federation of State, County, and Municipal Employees, Local 1006—and union officials for inadequately investigating her allegations and declining to file grievances on her behalf. The district court granted the defendants' motions for summary judgment. Because Tomas failed to present evidence that her employer or union treated her unfavorably based on her race, national origin, or protected activity, we affirm the judgment.

Tomas, whose job at the Department involved processing unemployment claims, bases her suit on two episodes. First, after Tomas suggested to a coworker that the Department denied an applicant benefits because he is white, Tomas's manager orally counseled her not to comment on race in the workplace. (The collective bargaining agreement states explicitly that oral counseling is not disciplinary, and the record shows that counseling does not result in docked time, pay, or seniority.) Tomas filed a discrimination charge with the EEOC, alleging that a non-white employee was not disciplined for similar conduct.

The second episode occurred months later, when the Department promoted Tomas on a probationary basis to a similar job involving more complex claims. The Department, however, declined to offer her the position permanently. During the probationary period, Tomas's supervisor was a white, Ukrainian woman. (According to Tomas, Ukrainians generally dislike Polish people.) The supervisor showed Tomas how to perform the new job and gave her training materials. But after only a few weeks, the Department returned her to her former position because she was not keeping up with her assignments. Meanwhile, the Department gave an African-American employee in another office an entire year to train for a promotion. Tomas filed another EEOC charge, alleging discrimination and retaliation in not being promoted.

Tomas also asked her union to file grievances against the Department on her behalf, but the union—after investigating—declined to do so. As part of the investigation, one union official interviewed several of Tomas's coworkers of various races, though Tomas saw her interview only two African-American employees. The union's grievance committee, which is separate from the local union branch, ultimately decided that Tomas's most compelling would-be grievance lacked merit.

Based on these events, Tomas sued the Department and her superiors ("state defendants") as well as the union and the relevant union officials ("union defendants"). These parties, she asserted, discriminated against her because she is white and Polish and had previously filed a discrimination charge with the EEOC. *See* 42 U.S.C. §§ 1981,

1983, 2000e-2(a), (c), 2000e-3(a). After discovery, all parties moved for summary judgment.

The district court granted the defendants' motions. Regarding Tomas's discrimination claims, the court concluded that she failed to produce evidence from which a jury could find that she suffered an adverse employment action while she was meeting her employer's legitimate expectations and that she was treated less favorably than similarly situated, non-white and non-Polish employees. *See Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016); *Terry v. Gary Cmty Sch. Corp.*, 910 F.3d 1000, 1005–07 (7th Cir. 2018). The episode of oral counseling, the court said, was not actionable discrimination because it was not an adverse employment action. The Department's decision not to promote Tomas permanently, the court continued, also was not actionable because Tomas had not put forth evidence that she met the Department's legitimate expectations during her probationary period or that the defendants treated her worse than similarly situated employees. Indeed, the court pointed out that, around the same time, the Department promoted two other white, Polish employees. Finally, regarding the claim against the union defendants, the court ruled that a jury could not conclude that these defendants discriminated or retaliated against Tomas because the record shows that they followed protocol when responding to her complaints.

On appeal, Tomas first contests the district court's conclusion that she did not put forth evidence that the state defendants discriminated against her. She argues that the record shows that the Department did not train her as well as non-white, non-Polish employees and that it prematurely ended her probationary period.

We agree with the district court that the state defendants were entitled to summary judgment on these discrimination claims. Tomas failed to put forth evidence that, taken holistically and viewed in her favor, could establish a prima facie case of discrimination. First, oral counseling without a tangible consequence is not an adverse employment action. *See Abrego v. Wilkie*, 907 F.3d 1004, 1012–13 n.2 (7th Cir. 2018). Second, Tomas failed to show that she was meeting expectations while on probation; to the contrary, the record shows that she did not keep up with the work to the detriment of claimants seeking benefits. Third, she did not produce evidence from which it could be inferred that the state defendants gave her less training than they gave to non-white or non-Polish employees. Though she maintains that one African-American employee in another office received a year of training, there was no evidence of a common decision maker, which would be needed for a valid comparison. *See Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 688 (7th Cir. 2007). Moreover, the

Department cut short another African-American employee's probationary period and promoted two other white, Polish employees. (Tomas suspects that the Department promoted other Polish employees to cover up their discriminatory conduct against her, but mere suspicion does not create a factual dispute, *see Jordan v. Summers*, 205 F.3d 337, 345 (7th Cir. 2000).)

The district court also properly entered summary judgment for the state defendants on Tomas's retaliation claims. To stave off summary judgment, Tomas needed to produce evidence that the defendants took an adverse employment action against her for engaging in a protected activity. *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017). But Tomas's only proof is suspect timing—her probationary period started approximately four months after she filed her first EEOC charge—and that generally is insufficient by itself to support a retaliation claim. *See Muhammad v. Caterpillar, Inc.*, 767 F.3d 694, 700–01 (7th Cir. 2014). Moreover, one cannot retaliate for conduct that he or she does not know about, *see Emerson v. Dart*, 900 F.3d 469, 472 (7th Cir. 2018), and there is no evidence that Tomas's supervisor knew about the EEOC charge until after the probationary period.

Finally, we also agree with the district court's entry of summary judgment for the union defendants. We apply the same standards to assess the claims under Title VII and § 1981 against the union defendants as we did to assess the claims against the state defendants. *See Green v. Am. Fed'n of Teachers/Ill. Fed'n of Teachers Local 604*, 740 F.3d 1104, 1106–07 (7th Cir. 2014) (union and state defendants); *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 403 (7th Cir. 2007) (Title VII and § 1981). The union officials responded to Tomas's allegations and assisted her in the same manner as they do for other union members. Tomas emphasizes that she saw one of the union officials interview only two African-American coworkers during her investigation of Tomas's case, but the record shows that the defendant talked to several more employees, some of whom were white. And ultimately, it was a grievance committee, apart from the local union, which decided not to file a grievance on her behalf.

We have considered Tomas's remaining arguments and none has merit.

AFFIRMED